## Taxation of Alcohol

MARGIOTTI, Attorney General, December 31, 1937.—
We have your request to be advised whether, during the
period it was in effect, the Act of August 6, 1936, P. L. 92,
imposed a tax upon the delivery of all alcohol within the
Commonwealth, or whether the act applied only to such
alcohol as was delivered to the Pennsylvania Liquor Con-
trol Board for sale through its State stores system.

Your inquiry necessarily raises two questions:

(1) Must all alcohol purchased in the Commonwealth
be bought from, or through, the Pennsylvania Liquor
Control Board?

(2) What alcohol was made taxable by the act under
consideration?

In order properly to consider your inquiry, it is neces-
sary to review the Pennsylvania Liquor Control Act of
November 29, 1933, P. L. 15, as reënacted and amended
by the Act of July 18, 1935, P. L. 1246, and to endeavor to
ascertain therefrom the intention of the legislature with
reference to the sale and possession of alcohol within the
Commonwealth of Pennsylvania.

The act in question was in effect during the period from
August 15, 1936, to May 31, 1937, inclusive. Therefore,

our answer to your inquiry will be confined to the state of the law during the time the act was in effect. Any changes in the law which may have been made subsequent to that time have no bearing upon the issues involved and will not be considered in this opinion.

". . . it is a cardinal rule of construction of statutes that effect must be given, if possible, to the whole statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible": 59 C. J. 995, sec. 595.

The Pennsylvania Liquor Control Act of 1933, supra, did not define "alcohol", nor did the said act confer any specific authority upon the Pennsylvania Liquor Control Board to deal with alcohol.

In 1935, section 2 of article I of the Pennsylvania Liquor Control Act was amended to include a definition of "alcohol". Likewise, the definition of "liquor" was amended to include those liquors which are "intended for beverage purposes". Obviously, it was the intention of the legislature to treat "alcohol" and "liquor" as different subjects.

Section 201 of article II of the Pennsylvania Liquor Control Act, which defines the general powers and duties of the Pennsylvania Liquor Control Board, was amended in 1935 so as to authorize the board:

"(b) To control the manufacture, possession, sale, consumption, importation, use and delivery of liquor and alcohol in accordance with the provisions of this act; and to fix the wholesale and retail prices at which liquors shall be sold at Pennsylvania liquor stores."

It is pertinent to note that while the board was given authority to control the manufacture, etc., of liquor and alcohol, its authority to fix wholesale and retail prices was confined solely to "liquors" which, as hereinbefore pointed out, were considered a subject separate and distinct from alcohol. If the legislature had intended to im-

pose upon the Pennsylvania Liquor Control Board the duty to sell alcohol at the Pennsylvania liquor stores, it would have given the board the power, and imposed upon it the duty, to fix the wholesale and retail prices of such alcohol. By failing to grant such a power and impose such a duty, the legislature must have intended that the question whether alcohol should be sold at Pennsylvania liquor stores was one for determination by the board as a matter of policy, rather than by legislative direction.

By subsection (d) of section 201 of the Pennsylvania Liquor Control Act, as amended in 1935, the Pennsylvania Liquor Control Board was given authority:

"To grant and issue liquor licenses, and to grant, issue, suspend or revoke alcohol permits, as provided in this act."

Section 203 of the Pennsylvania Liquor Control Act, as amended in 1935, prescribed certain specific subjects concerning which the board might make regulations. Those subsections which have to do with alcohol authorized the board to make regulations regarding:

"(a) The equipment and management of Pennsylvania Liquor Stores and warehouses in which liquor and alcohol are kept or sold, and the books and records to be kept therein . . .

"(c) The purchase of liquor and alcohol and its supply to Pennsylvania Liquor Stores . . .

"(f) The sealing and labeling of liquor and alcohol sold under this act and of liquor and alcohol lawfully acquired by any person prior to January first, one thousand nine hundred and thirty-four . . .

"(j) The issuance of alcohol permits."

That section did not impose any duty upon the board to make regulations, but merely gave the board the right to do so.

Section 301 of the Pennsylvania Liquor Control Act, as amended in 1935, authorized the sale of alcohol at Pennsylvania liquor stores.

Section 305 of that act, as amended in 1935, provided that:

"Every Pennsylvania Liquor Store shall keep in stock for sale such classes, varieties, and brands of liquor and alcohol as the board shall prescribe."

It also authorized the sale by the board of tax-exempt

". . . alcohol to the Commonwealth of Pennsylvania, and to persons to whom the board shall, by regulation to be promulgated by it, issue special permits for the purchase of such tax exempt alcohol."

Section 305 likewise provided that such permits might be issued to the United States or any governmental agency thereof, to any university or college of learning, to any laboratory for use exclusively in scientific research, etc. This provision of the act made clear the meaning of the term "alcohol permits", which were authorized to be issued under section 203($j$), above referred to.

While the Pennsylvania Liquor Control Act, as reënacted and amended in 1935, made it unlawful for any person to expose or keep for sale any liquor within the Commonwealth, except as provided in the act, the only prohibition with reference to "alcohol" was contained in section 601($b$) of the act, which made it:

". . . unlawful for any person to sell alcohol to any person, except in accordance with regulations promulgated by the board."

This section, which imposed restrictions on sales, did not make it unlawful for any person or agency other than the Pennsylvania Liquor Control Board to sell alcohol within the Commonwealth, but simply provided that alcohol could not be sold except in accordance with the regulations promulgated by the board. In referring to the sale of alcohol by one person to another, the act clearly indicated the legislative intent that alcohol might be sold within the Commonwealth otherwise than through the Pennsylvania Liquor Control Board.

Section 606 of the Pennsylvania Liquor Control Act of 1933, supra, provided as follows:

"It shall be unlawful for any person, other than the board or the holder of a sacramental wine permit or of an importer's license, to import any liquor whatsoever into this Commonwealth, but this section shall not be construed to prohibit railroad and pullman companies from selling liquors purchased outside the Commonwealth in their dining, club and buffet cars, which are covered by public service liquor licenses, and which are operated in this Commonwealth."

In 1935 this section was amended to include the following paragraph:

"It shall be unlawful for any person to import alcohol into this Commonwealth, except in accordance with regulations to be promulgated by the board."

This amendment is extremely enlightening on the subject here under discussion. It permitted alcohol to be imported within the Commonwealth subject to the regulations of the board; however, it did not make the same unqualified prohibition with reference to the importation of alcohol as it did with reference to the importation of liquor.

Here again there was a patent intention on the part of the legislature to treat alcohol in a class different and apart from liquor, and to exempt alcohol from that class of commodities which were required to be sold to, and through, the Pennsylvania Liquor Control Board.

Considering the Pennsylvania Liquor Control Act of 1933 as a whole, together with the amendments of 1935, it appears without any equivocation that the legislature intended to treat alcohol and liquor as two separate subjects. Furthermore, it is obvious that the legislature intended that the Pennsylvania Liquor Control Board should have the power and the authority to sell alcohol in Pennsylvania liquor stores, but that the sale of alcohol should not be restricted to the board alone. The legislature

intended to put the control of alcohol in the board, in order to give the board power to make rules and regulations for its sale and disposition within the Commonwealth. Under the aforesaid act, as amended in 1935, the board could, if it saw fit, prescribe that alcohol should be sold only through the Pennsylvania Liquor Control Board and through the Pennsylvania liquor stores. On the other hand, the board has the right to provide that alcohol may be sold by one person to another, so long as the vendor and vendee comply with the regulations of the board. Accordingly, the sale and purchase of all alcohol in Pennsylvania need not be made to or by the Pennsylvania Liquor Control Board, so long as the persons selling or purchasing the alcohol comply with the law and the regulations of the board.

We now come to the specific question whether all alcohol delivered within the Commonwealth of Pennsylvania during the period the Act of August 6, 1936, supra, was in effect was subject to the tax imposed by the act, or whether during that period the said tax applied only to that alcohol which was delivered to the Pennsylvania Liquor Control Board for sale through the State stores system.

"As a general rule revenue laws . . . operate to impose burdens upon the public, or to restrict them in the enjoyment of their property and the pursuit of their occupations, and, when they are ambiguous or doubtful, will be construed strictly in favor of the taxpayer and against the taxing power. . . . In order to sustain the tax, it must come clearly within the letter of the statute. . . . So, too, they should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences": 59 C. J. 1131, sec. 670.

Section 1 of the Act of 1936 included in its definition of distilled spirits any:

". . . alcohol, other than denatured alcohol unfit for beverage purposes."

Section 2 of that act provides:

"An excise tax is hereby imposed upon the delivery of all distilled, rectified, and blended spirits to the board for sale in this Commonwealth, at the rate of four per cent (4 %)."

It is evident that the tax imposed by the Act of 1936 was upon such distilled spirits as were delivered to the board for sale within the Commonwealth. Therefore, the tax imposed was an excise tax upon the privilege of delivering alcohol to the board. Accordingly, if the law did not require all alcohol sold within the Commonwealth to be delivered to the Pennsylvania Liquor Control Board for sale by the board through the State stores system, the tax would not apply to that alcohol which was not delivered to the board for sale through the State stores system.

Since we have concluded that the Pennsylvania Liquor Control Board may permit alcohol to be sold by one person to another, subject to its regulations, without the necessity of such alcohol having been purchased by the board, it is clear that the tax imposed by the Act of 1936 did not apply to all alcohol dealt with within the Commonwealth. Furthermore, a study of the Act of 1936 and of the facts leading up to its passage clearly indicates that the tax under consideration was not intended to apply to all alcohol delivered within the Commonwealth, but only to such alcohol as was delivered to the board for sale through the Pennsylvania liquor stores.

Inasmuch as sales of alcohol are made by the Pennsylvania Liquor Control Board through the State stores system, it was necessary to include "alcohol" within the scope of the subjects taxable under the Act of 1936. However, alcohol which is used for rectifying, blending, and manufacturing nonbeverage products, and that which is used by hospitals, eleemosynary institutions, etc., is sold, under the regulations of the board, directly by the vendor to the consumer, and not through the Pennsylvania Liquor Control Board.

72

It has been suggested that as long as alcohol is sold within the Commonwealth subject to the regulations of the Pennsylvania Liquor Control Board, and since the board can require all sales to be made through the State stores system, delivery to the ultimate consumer should be construed as delivery to the board's agent. However, the Act of 1936 imposed a tax only upon such alcohol as was delivered to the board for sale within the Commonwealth. Alcohol which was delivered to the board or its agent for further processing within the Commonwealth clearly was not a subject of the tax, because it was not intended "for sale in this Commonwealth".

While ordinarily it is not proper to go outside the body of a taxing statute in order to determine its meaning, nevertheless we feel that in this case a reference to the purpose and intent of the legislature in enacting the Act of 1936 is entirely relevant and proper.

The Act of 1936 was enacted as a means of providing approximately $1,400,000 in revenue. At the time it was under consideration, and in order to determine the rate at which the tax should be assessed, the sponsor of the bill requested the Pennsylvania Liquor Control Board to furnish an estimate of its anticipated purchases of liquor and alcohol for sale within the Commonwealth for the balance of the biennial period. The Pennsylvania Liquor Control Board advised that it anticipated purchases of between $35,000,000 and $40,000,000 for the said period. Accordingly, it was determined that a four percent tax would be ample to provide the required revenue. We are advised that in arriving at the figures of $35,000,000 or $40,000,000, the Pennsylvania Liquor Control Board took into consideration only those liquors and that alcohol which it anticipated would be sold through the Pennsylvania liquor stores, and in no way considered alcohol which would be used in manufacturing nonbeverage products or for blending. We are further advised that if all alcohol which it was anticipated would be purchased within the Commonwealth during the period in question

had been included in the estimate submitted by the board, the figure would have amounted to $50,000,000, which, if taxed at the rate of four percent, would have yielded $2,000,000 in revenue. In other words, if all alcohol had been included in the board's estimate, the rate of tax could, and no doubt would, have been reduced to approximately three percent.

Therefore, since the estimate of anticipated purchases of liquor and alcohol by the Pennsylvania Liquor Control Board for sale through its State stores system did not comprehend the purchase of all alcohol to be used in the Commonwealth, and since by inclusion of all alcohol the estimate of the board and the yield of the tax would have been far greater than the amounts anticipated or required, it is clear that alcohol not purchased for sale through the Pennsylvania liquor stores was not intended to be included.

In order to provide the revenue required, it was at first proposed to impose a tax of 5 cents a gallon on all liquor manufactured within the Commonwealth of Pennsylvania, and House Bill No. 169 (Special Session of 1936), providing for such a tax, was introduced. However, the said bill was opposed on the ground that, if enacted into law, its enforcement would impose a hardship upon Pennsylvania manufacturers, and that, by reason of the additional cost of their product, they would be put to a disadvantage in competing with out-of-State vendors. Accordingly, in order to eliminate this discriminatory feature, the said bill was amended and enacted in its amended form.

If, during the period it was in effect, the Act of 1936 imposed a tax upon alcohol sold to blenders and rectifiers of whiskey in Pennsylvania, the same competitive disadvantage accrued to them as would have resulted had House Bill No. 169 been enacted in its original form. Therefore, it is clear that the legislature did not intend the tax in question to affect manufacturers and blenders of alcohol until such alcohol was delivered to the Penn-

sylvania Liquor Control Board for sale within the Commonwealth through the Pennsylvania liquor stores.

Therefore, you are advised that alcohol may be sold and purchased within the Commonwealth of Pennsylvania, independently of the Pennsylvania Liquor Control Board or of its States stores system, so long as such sales and purchases are made in accordance with the regulations of the board.

You are likewise advised that the tax imposed by the Act of August 6, 1936, supra, during the period it was in effect, applied only to that alcohol which was delivered to the Pennsylvania Liquor Control Board for sale through its State stores system, and not to that alcohol which was sold and delivered under the regulations of the board, but not through its State stores system.